

# THE ATTORNEY GENERAL

## OF TEXAS

Gerald C. Mann                 AUSTIN 11, TEXAS

**ATTORNEY GENERAL**

Hon. J. T. McMillan            Opinion No. O-3928
Deputy Commissioner            Re:  Whether or not the Banking Com-
Department of Banking          missioner has authority to allocate
Austin, Texas                  the current lump-sum departmental ap-
                               propriation to the Banking Department
                               for the salaries and expenses of build-
                               ing and loan associations, loan and
Dear Mr. McMillan:             brokerage companies, and credit unions.

        We beg to acknowledge receipt of your letter asking
for a construction of the current appropriation act for the
State Banking Department insofar as it concerns the division
embracing building and loan associations, loan and brokerage
companies, and credit unions.  Your precise questions are as
follows:

        "(1)  Does the Banking Commissioner have authority to
allocate the items in the Second Division between the
Building and Loans, Loan and Brokerage and Credit Unions?

        "(2)  If so, can the Banking Commissioner employ the
same method of allocation as was evidently used by the
Legislature.  To illustrate, can the Banking Commissioner
determine administratively that the cost of enforcing the
Building and Loan Law shall not exceed $12,425.00 (70%
of $17,750.00); that of enforcing the Loan and Brokerage
Law shall not exceed $3,550.00 (20% of $17,750.00) and
the cost of enforcing the Credit Union Law shall not ex-
ceed $1,775.00 (10% of $17,750.00), and having done so
allocate to building and loan items or portions of items
under the Second Division without regard to the actual
purpose of expenditure totalling $12,425.00; to loan and
brokerage companies items or portions of items totalling
$3,550.00 and to credit unions items or portions of items
totalling $1,775.00, and direct payment accordingly?

        "(3)  If you have indicated in response to the second
question that the Banking Commissioner can employ the meth-
od of allocation above outlined, then if the Commissioner
has made such allocation and discovers that the allocations
are not in accordance with fact, can he change such alloca-
tion so as to accord with the facts as they develop?

        "(4)  If you, in answer to QuestionNo. 2, have indi-
cated that the method of allocation outlined in that ques-
tion is not usable, then please indicate the method of

allocation which should be used by the Commissioner.

"(5) If there is any different rule applicable to salaries provided for under the appropriation as distinguished from travel expense and other items of expense, please indicate what this difference may be and the proper method of allocation of each."

The appropriation for the division of the department above mentioned is as follows:

"29. Supervisor Bldg. and Loan and Loan
and Brokerage and Credit Unions) ............ $ 4,250.00
30. Examiner ........................................ 3,600.00
31. Examiner ........................................ 3,600.00
32. Bldg. and Loan and Loan and Brokerage and
Credit Union Legal Adviser (part-time)... 1,800.00
33. Bldg. and Loan and Loan and Brokerage and
Credit Union travel and other items of
contingent expense, including bond
premiums                                      4,500.00

TOTAL -- Building and Loan and Loan and
Brokerage and Credit Union Division     $ 17,750.00"

The appropriation to the division for each fiscal year is identical.

If the appropriation under consideration came solely from the General Fund of theState, unaffected by the source and purpose of the fund or funds involved, your questions would be easily answered, but this is not the case.

Section 1 of S.B. No. 423, in which is found the departmental appropriation under consideration declares:

"That the several sums of money herein specified or so much thereof as may be necessary, are hereby appropriated out of any moneys in the State treasury, not otherwise appropriated in the General Revenue Fund or special funds as may be shown for the support and maintenance of the several departments and agencies of the State government for the two-year period, beginning September 1, 1941, and ending August 31, 1943."

So that, the lump sum of $17,750.00 appropriated to the purposes enumerated in the division under consideration has been, perforce of the terms of the Senate Bill itself, appropriated from the General Fund or from special funds as the permanent statutes may provide with respect to the three classes of corporations embraced in the division.

Section 9 of the Building and Loan Associations Act (Ver.Civ.Stat.Art. 881a) authorizes the Banking Commissioner to collect certain fees from building and loan associations in lieu of examination fees, expressly providing that the assessment by the Banking Commissioner shall be for enough

"to carry out the provisions of this Act; and said fees when collected shall be placed in a separate fund with the State Treasurer to be expended during the current year, or so much thereof as may be necessary in carrying out the provisions of this Act; and should there be an unexpended balance at the end of the year, the Banking Commissioner of Texas shall reduce the assessment for the succeeding year, so that the amount produced and paid into the State treasury, together with said unexpended balance in the treasury, will not exceed the amount appropriated for the current year, to pay all necessary expenses of supervising the operation and examining the business of the associations doing business under the provisions of this Act, which funds shall be paid out upon requisition made out and filed by the Banking Commissioner of Texas, when the Comptroller shall issue warrants therefor."

The Loan and Brokerage Companies Act (Ver.Civ.Stat., Art. 1524a) provides for fees to be paid by such companies, as follows:

"Said corporation shall pay the actual traveling expenses, hotel bills, and all other actual expense incident to such examination and a fee not exceeding one-eighth of one per cent of its actual paid-in capital.  (Sec.2)*** and (such companies as have sold in Texas their bonds, notes, certificates, debentures, or other obligations, or are offering for sale in Texas their bonds, notes, certificates, debentures, or other obligations) shall file a copy of such statement with the Banking Commissioner of Texas, together with a fee of Ten ($10.00) Dollars for filing.  (Sec.4)*** The corporation shall pay a fee of Fifteen ($15.00) Dollars for filing each such statement."  (Sec. 7)

The statute does not direct the disposition to be made by the Banking Commissioner of these examinations and statement fees.  Impliedly, they are to be paid by him into the General Fund of the State treasury.

H.B. No. 845 of theRegular Session of the 47th Legislature, amending Article 2465 of the Revised Civil Statutes of Texas, 1925, and the amendments thereof, relating to credit unions, declares with respect to these as follows:

"The Banking Commissioner shall cause each credit union to be examined at least once yearly, such examination to be made by (1) some competent person or persons designated by the Banking Commissioner who shall be paid by the Banking Commissioner an amount not to exceed ninety (90) per cent of the fees as herein provided, which said fees shall be paid to said banking commissioner by the respective unions examined as provided by this Act as compensation for his or their services and as reimbursement for travel expenses and other expenses incurred; (2) by one or more credit union examiners who shall be appointed by the Banking Commissioner and shall receive a salary of not exceeding Three Hundred Dollars ($300.00) per month, and shall be reimbursed for travel expenses in the sum of Four Dollars ($4.00) per day, plus cost of transportation, such examiners to retain their salary and expenses as above provided out of fees collected by them as hereinafter provided; (3) or by the Deputy Commissioner, Departmental Examiner, any bank examiner, assistant bank examiner, building and loan supervisor or building and loan examiner, who shall receive and retain the fees collected by them as hereinafter provided, such fees so collected to be credited on the salary of the person collecting the same, so that such person shall in no event receive compensation in excess of his salary as provided by law.

"Each credit union examined shall pay an examination fee fixed by the Banking Commissioner not to exceed Twenty-five Dollars ($25.00) per day per person engaged upon such examination.

"All fees as above provided shall be paid by the credit union to the person or persons making the examination, and such persons shall make a monthly account to the Banking Commissioner of the fees so collected during the preceding month, fees in excess of those retained by the examiner as above provided shall be paid to the Banking Commissioner and by him deposited with the State Treasurer to be held in a special fund and used for the purpose of enforcing the provisions of this law."

It will therefore be seen that those fees paid by building and loan associations go into a separate fund with the State Treasurer; those fees paid by loan and brokerage companies are to be paid into the General Fund of the State Treasury; while a comparatively small portion of the fees paid by credit unions are to be paid into a special fund with the State Treasurer.

"The "separate fund" paid by the building and loan associations and the "special" fund paid by the credit unions are to be used for the express purpose of expenses in administering the laws governing these respective corporations.

A rider attached to the appropriation for the State Banking Department declares:

"Subject to the limitations hereinafter provided, there is appropriated to the Banking Department an amount equal to the total fees and revenues collected by said department during the biennium ending August 31, 1943, plus an amount equal to the total fees and revenues collected by said department during the biennium ending August 31, 1943, plus an amount equal to the fees and revenue collected by said Department during the biennium ending August 31, 1941, in excess of the expenditures of said Department during said biennium, and the Department shall limit its expenditures to such amounts, provided that said Department shall not, in any event, anything in this bill to the contrary notwithstanding, spend more during the biennium than the total itemized appropriations for said biennium; further, provided that if during the first year of the biennium said Department shall spend less than the total itemized appropriation for said year, then said unexpended balance shall be expendable during the second year of the biennium for the purpose of enforcing the laws of this State for which said Department is charged with responsibility of enforcement, and further providing that not more than seventy-five per cent (75%) of the appropriation for the Building and Loan-Loan and Brokerage-Credit Union Division shall be payable out of the special account created and maintained by the collection of fees by the Banking Department under and pursuant to the Building and Loan Laws of this State."

The construction of this rider necessarily enters into any consideration of the answers to your questions.

This rider pertains to the entire appropriation for the Banking Department, which appropriation includes, of course, not only the division hereinbefore discussed but likewise the first division--that of State banking corporations.

Now, Article 362 of the Revised Civil Statutes declares:

"Except as to savings banks, the expense of every general and special examination shall be paid by the corporation examined in such amount as the Commissioner shall certify to be just and reasonable, and assessments therefor shall be made by the Commissioner upon the banks examined in proportion to assets or resources held by the bank upon the dates of the examination of the various banks."

Article 363, governing the disposition of such fees, declares:

"All sums collected as examination fees shall be paid by the Commissioner directly to the State treasury to the credit of the General Revenue Fund. Expenses of examination and of the Commissioner in enforcing the provisions of this title shall be paid upon the certificate of the Commissioner by warrant of the Comptroller upon the State treasury."

It is the rule that an appropriation act can not have the effect to repeal, amend or modify a general law. (State v. Steele, 57 Tex. 203; Linden v. Finley, 92 Tex. 451; Attorney General's Opinion 1916-1918, p. 110; Attorney General's Opinion No. 2965, 1934-1936, p. 46; Attorney General's Opinion No. 2970, 1934-1936, p. 72; Attorney General's Opinion No. 0-1837).

Since the Building and Loan Associations Act specifically limits the purpose for which the "separate fund" under that Act has been accumulated to the express purpose of enforcing the law governing such Association, and since H.B. No. 845 restricts the use of the "special" fund created by fees from credit unions to the purpose of enforcing the provision of the Credit Unions Act, the Legislature is powerless by its Appropriation Act, to divert such funds from the respective purposes for which they were solely destined by statute to another purpose. (See 0-2641, copy herewith).

You are therefore respectfully advised that since the Legislature has no authority to allocate these special or separate funds to any other use or purpose than the use or purpose for which they were created, it follows that you, as Banking Commissioner, have no such power. No allocation of the appropriation can be made in such manner as to violate the respective statutes creating these special funds.

It does not follow from what we have said, however, that the Banking Commissioner has no discretion or authority to allocate to an extent the lump-sum appropriation of $17,750.00 to the division of the department under consideration. The context of this appropriation, and especially when construed in the light of the rider above quoted, indicates clearly that the Legislature intended that the Banking Commissioner should have the power to allocate this lump-sum appropriation to the purposes of supervising the respective corporations mentioned insofar as it (the Legislature) had authority to provide for allocation.

We think the Banking Commissioner would have authority in the exercise of his sound official discretion to allocate the lump-sum appropriation in any way and to any extent that does not violate the statutes hereinabove quoted and discussed, requiring the use of separate funds and special funds therein mentioned to be devoted solely to the statutory purposes for which they were created.

It may be thus said, by way of illustration, of Items 29, 30, 31, 32 and 33 comprehending salaries for supervisor, examiners, and legal adviser, and travel and contingent expenses where the service or travel and contingent expense are with respect to two or more of the corporations being considered in accordance with the equities of the situation; that is to say, the reasonable pro rata share of such salaries or expenses to be paid. No scientific basis or statutory basis whatsoever can be given for such allocation. The whole matter rests in a fair exercise of the sound official discretion of the Banking Commissioner in the light of all the facts surrounding the matter. His discretion when fairly exercised under the circumstances would be conclusive, even upon the courts. The courts would have no authority to revise such discretion thus lodged in the Banking Commissioner in the absence of fraud, arbitrariness or lack of fact basis reasonably necessary to support his conclusions.

This discretion of the Commissioner may, we think, be exercised again and as often as the necessities require to effect a re-allocation. We are also inclined to the view, and so advise you, that in the exercise of this discretion in the matter of allocating the appropriation for salaries, the Commissioner would be justified in considering the contingencies known and unknown of the seasonal fees entering into the fund or funds.

The allocation made by the Commissioner in the manner we have suggested with respect to the items of salaries for the supervisor, the examiners, and the attorney should not, we think, be affected by the known fact that in very truth it may happen that such officers for a given month may actually be engaged in activities concerning one only, or two only of the group of corporations with respect to which his salary has been appropriated. A salary payment is not legally contingent upon the officer's actual discharging his official duties anew. See Spears v. Sheppard, 150 S.W.(2) 769.

Just what extra requirements will be made of the department with respect to bookkeeping, and thus what additional requirements will be made in the matter of travel and expense accounts will be required, we can not say. Much of the information upon which the Commissioner could and would act in allocating such appropriation would of necessity be known to him. We refer especially to the character and extent of the services performed by the supervisor, examiners and legal adviser. But, whatever may be the additionally imposed duties, requirements and the like,

Hon. J. T. McMillan, page 8   (O-3928)


upon the department, we know of no other way to properly inter-
pret the Appropriation Act, and to advise with respect to its
practical application.

                              Very truly yours,

                              ATTORNEY GENERAL OF TEXAS

                              By /s/ Ocie Speer
                              Ocie Speer, Assistant

APPROVED SEP 23, 1941
/s/ Gerald C. Mann
ATTORNEY GENERAL OF TEXAS

APPROVED: OPINION COMMITTEE
BY:       BWB, CHAIRMAN

OS-MR:wb